USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/15/20___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Milton Barbecho, *et al.*,

                     Petitioners,

      –v–

Thomas Decker, *et al.*,

                     Respondents.

---

20-cv-2821 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

      Petitioners bring this writ of habeas corpus seeking immediate release from the custody of Immigration and Customs Enforcement (ICE).  For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART their motion for a temporary restraining order, and orders Respondents to IMMEDIATELY RELEASE Petitioners Vallejo, Barbecho, and Lis from immigration detention on reasonable conditions.

### I.    BACKGROUND

      Petitioners in this matter are seven civil immigration detainees, currently being held in ICE custody at the Bergen County Jail.  Pet. ¶ 2.  All Petitioners suffer from "chronic medical conditions."  *Id.*  Specifically, Petitioner Vallejo is a 39-year-old man who suffers from various circulatory diseases and is severely obese.  *Id.* ¶ 67.  He also has several mental health diagnoses, including bipolar disorder, post-traumatic stress disorder, and possible schizophrenia.  *Id.* ¶ 68.  Petitioner Diaz is a 40-year-old man who suffers from high blood pressure, *id.* ¶ 71, but has not been provided any blood pressure medications by the Bergen County Jail medical staff, Dkt. No. 17 at 2; Dkt. No. 17-1 at 2.  Petitioner Olaya Lugo is a 52-year-old man who is pre-diabetic and a

daily smoker.  Pet. ¶ 72.  Petitioner Molina is a 27-year-old man who is also pre-diabetic.  *Id.* ¶ 73.  Neither Petitioner Olaya Lugo nor Petitioner Molina has received necessary medical care related to their pre-diabetes while in ICE custody.  *Id.* ¶¶ 72–73.  Petitioner Barbecho is a 39-year-old man who has a history of tuberculosis and lung abnormalties for which he required surgery that permanently diminished his lung capacity.  *Id.* ¶¶ 6, 77.  The Bergen County Jail's medical staff has advised Barbecho that he is currently suffering from a lung complication but has not provided him with any treatment for it.  *Id.* ¶ 77.  Petitioner Garcia Alejo is a 24-year-old man who reports smoking several cigarettes daily for over two years.  *Id.* ¶ 78.  Petitioner Lis is a 39-year-old man who is a smoker and has a recent history of pneumonia.  *Id.* ¶ 80.

Petitioners assert that their "chronic medical conditions . . . subject them to a heightened risk of suffering serious harm or even death if they contract COVID-19."  *Id.* ¶ 2.  At least some of Petitioners' conditions have been classified by the Centers for Disease Control and Prevention as "serious underlying medical conditions" that place individuals suffering from such conditions at a "higher risk for severe illness from COVID-19."  Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.  These CDC-defined risk factors include chronic lung disease or moderate to severe asthma; serious heart conditions; conditions that cause a person to be immunocompromised, including smoking; severe obesity; diabetes; chronic kidney disease; and liver disease.  *See id.*

On April 5, 2020, Petitioners filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.  *See* Dkt. No. 1.  In their Petition, Petitioners allege that Respondents' deliberate indifference to their serious medical needs violates their due process rights.  On April 8, 2020, Petitioners filed a motion for a temporary restraining order and preliminary injunction, seeking

their immediate release from ICE custody subject to reasonable conditions.  Dkt. No. 3.  On

April 10, 2020, the Court held oral argument on this motion.  At oral argument, the parties

consented to resolution of this motion on the factual record now before the Court.  *See* Apr. 10

Hr'g Tr. at 4:16–5:8.

## II.   SEVERANCE

As a threshold matter, the Court concludes, for the reasons stated in *Coronel v. Decker,*

No. 20-cv-2472 (AJN), 2020 WL 1487274, at *2 (S.D.N.Y. Mar. 27, 2020), that considerations

of judicial economy and the urgent need to timely decide Petitioners' motion for a temporary

restraining order in light of the immediate risk to their health counsel against severance at this

juncture.  Accordingly, the Court exercises its discretion to defer ruling on the issue of severance

and proceeds to consider Petitioners' motion for a temporary restraining order.  Fed. R. Civ. P.

21 ("On motion or on its own, the court may *at any time*, *on just terms*, add or drop a party."

(emphasis added)).

## III.   TEMPORARY RESTRAINING ORDER LEGAL STANDARD

"A preliminary injunction is an equitable remedy and an act of discretion by the court."

*Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  The same standard

governs consideration of an application for a temporary restraining order.  *Andino v. Fischer*,

555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).  In general, a party seeking a preliminary injunction

or temporary restraining order "must . . . show a likelihood of success on the merits, a likelihood

of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the

party's favor, and that an injunction is in the public interest."  *Clapper*, 804 F.3d at 622 (citing

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  The burden on the moving party is

even higher where, as here, a party seeks a mandatory injunction—that is, an injunction

commanding a positive act, as opposed to one that merely maintains the status quo.  The Second

Circuit has instructed that a mandatory injunction "should issue 'only upon a clear showing that

the moving party is entitled to the relief requested, or where extreme or very serious damage will

result from a denial of preliminary relief.'"  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60

F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.

1985)).

## IV.    LIKELIHOOD OF SUCCESS ON THE MERITS[1]

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the

Government from treating the medical needs of incarcerated individuals with deliberate

indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *accord Charles v. Orange

Cty.*, 925 F.3d 73, 82 (2d Cir. 2019).  The Eighth Amendment, however, does not apply to civil

detainees.  Such individuals "have not been convicted of a crime and thus may not be punished

in any manner—neither cruelly and unusually nor otherwise."  *Darnell v. Pineiro*, 849 F.3d 17,

29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)) (internal quotation

marks omitted).  The Supreme Court has held, however, that "persons in civil detention deserve

at least as much protection as those who are criminally incarcerated."  *Charles*, 925 F.3d at 82

---

[1] Petitioners also assert a general conditions of confinement claim, alleging that "ICE's refusal to
provide them with adequate protection during the COVID-19 outbreak violates the due process
clause of the Fifth Amendment."  Dkt. No. 3 at 9.  However, even assuming Petitioners have
adequately alleged the elements of such a claim, the Court cannot conclude, on the record before
it, that they are *likely* to succeed on the merits of this claim because the evidence alleged in
support of it is contested by Respondents.  *Compare* Dkt. No. 3 at 10–11 ("Petitioners are not
able to take steps to protect themselves—such as social distancing, using hand sanitizer, or
washing . . . hands regularly—and the government has not provided adequate protections.") *with*
Dkt. No. 10 (describing precautions taken at the Bergen County jail, including suspending ICE
detainee intake; screening staff members and vendors; limiting detainee interaction in social
spaces; increasing general cleaning and sanitizing; providing disinfectant spray, hand sanitizer,
and soap in every housing unit; and educating staff and detainees on the importance of hand
washing and general hygiene); *see also infra* at 8 n. 3.

(citing *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  For federal civil detainees, those rights are cognized under the Fifth Amendment's Due Process Clause.  *Id.*  The Due Process Clause thus prohibits the federal government from being deliberately indifferent to the medical needs of civil detainees. "[D]eliberately indifferent conduct" directed towards civil detainees is "egregious enough to state a substantive due process claim."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998).  And the Due Process Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Courts in the Second Circuit use a two-prong test to review such claims.  *See Charles*, 925 F.3d at 85–86.  On the first prong, Petitioners must show that they have serious, unmet medical needs.  On the second, they must show that Defendants acted with deliberate indifference to these needs.  *Id.*

### A.  Petitioners' Serious, Unmet Medical Needs

"The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Charles*, 925 F.3d at 86 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

Petitioners Vallejo, Barbecho, and Lis easily meet this standard.  Indeed, Respondents do not contest that each suffers from conditions that place him at a "higher risk for severe illness from COVID-19" under current CDC guidance.  Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; *see also* Apr. 10 Hr'g Tr. at 16:19–24.  Petitioners therefore have a serious medical need to "take actions to reduce [their] risk of getting sick with

the disease," Centers for Disease Control and Prevention, *What You Can Do*,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html,

because, for them, contracting COVID-19 is considerably more likely to lead to "death,

degeneration, or extreme pain," *Charles*, 925 F.3d at 86.  The CDC recommends that individuals

at a higher risk of severe illness from COVID-19 should take several precautions, including

staying at home if possible, washing hands often, staying six feet away from others, keeping

away from those who are sick, and cleaning and disinfecting frequently touched surfaces.  *See*

Centers for Disease Control and Prevention, *What You Can Do*,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html.

> Moreover, these Petitioners' medical needs remain unmet.  As discussed below, though

the record demonstrates that ICE has taken steps to address the COVID-19 pandemic both

generally and at the Bergen County Jail, it has not gone far enough to address the *particular risks*

COVID-19 poses to high-risk individuals like Petitioners Vallejo, Barbecho, and Lis.  In short,

on the factual record in this case, these Petitioners have met their burden on the first prong.

> With respect to Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo, it is less clear on

the record whether they have serious medical needs that "may produce death, degeneration, or

extreme pain."  *Charles*, 925 F.3d at 86.  The Court does not doubt that because these Petitioners

also suffer from chronic medical conditions, they "may be at heightened risk of developing

complications from COVID-19."  *Ramsundar v. Wolf*, 2020 WL 1809677, at *3 (W.D.N.Y. Apr.

9, 2020).  Moreover, the Court is concerned that these Petitioners do not appear to be receiving

treatment for their chronic medical conditions from the Bergen County Jail's medical staff.

However, their specific medical conditions do not appear in the CDC guidance defining groups

at higher risk for severe illness from COVID-19, Centers for Disease Control and Prevention,

*Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, a fact Respondents pointed out at oral argument on this motion, *see* Apr. 10 Hr'g Tr. at 15:22–16:18.[2]  Ultimately, the Court need not decide whether these Petitioners satisfy the serious medical needs standard because the Court concludes below that the record does not establish that ICE has shown deliberate indifference to any of their purported medical needs.

### B.  Respondents' Deliberate Indifference to Petitioners' Serious Medical Needs

The Court next moves to the inquiry's second prong, which requires Petitioners to show that Respondents acted with deliberate indifference to the challenged conditions.  This prong "has a . . . complicated history in this Circuit."  *Charles*, 925 F.3d at 86.  To start, although courts have often referred to this as the "subjective prong" of the inquiry, it is "better classified as a '*mens rea* prong' or 'mental element prong.'"  *Darnell*, 849 F.3d at 29.  Indeed, the phrase "subjective" in this prong "might be a misleading description in that . . . 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have

---

[2] Though Petitioners Olaya Lugo and Garcia Alejo have a history of smoking, *see supra* Section I, smoking itself is not an identified CDC risk factor; rather, being immunocompromised is an identified risk factor, and smoking, in turn, is listed as a condition that may cause a person to be immunocompromised.  *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.  These Petitioners have not offered any evidence that their histories of smoking have caused them to be immunocompromised.  Furthermore, though Petitioners Olaya Lugo and Molina are pre-diabetic, *see supra* Section I, the CDC risk factors include only diabetes, a condition distinct from pre-diabetes.  *See id.*; *see also United States v. Deutsch*, No. 18-cr-502 (FB), 2020 WL 1694358, at *1 & n.2 (E.D.N.Y. Apr. 7, 2020) (distinguishing between diabetes and pre-diabetes, which nearly one in three Americans has).  Finally, though Petitioners offer evidence that high blood pressure may place Petitioner Diaz at a heightened risk of developing complications from COVID-19, *see, e.g.*, Dkt. No. 17, that condition is not currently identified by the CDC as placing him at a higher risk of *severe* illness from COVID-19, *see* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

known)." *Darnell*, 849 F.3d at 35 (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)); *see also Charles*, 925 F.3d at 86 (deliberate indifference "can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind").   In short, a petitioner establishes a claim for deliberate indifference by "prov[ing] that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  This is a question of fact, susceptible to proof by circumstantial evidence.  *Charles*, 925 F.3d at 87 ("Whether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.").

 As an initial matter, the Court lauds ICE's increasing efforts to address the COVID-19 pandemic and takes particular note of the measures recently put into place generally and at the Bergen County Jail specifically to address the unprecedented threat this virus poses to its detainees.  Precautions taken at the Bergen County jail include, among others, suspending ICE detainee intake; screening staff members and vendors; limiting detainee interaction in social spaces; increasing general cleaning and sanitizing; providing disinfectant spray, hand sanitizer, and soap in every housing unit; and educating staff and detainees on the importance of hand washing and general hygiene.[3]  *See* Dkt. No. 10.  Moreover, as of April 4, 2020, ICE has generally instituted a procedure for re-assessing the custody status of detained individuals identified as potentially being at higher risk for serious illness from COVID-19 as defined by the

---

[3] The Court notes, though, that Petitioners dispute whether, in practice, all of these measures have actually been put into place at the Bergen County Jail.  *See* Dkt. No. 3-1–3-5.

CDC.  *See* Dkt. No. 13-1; *see also* Apr. 10 Hr'g Tr. at 17:21–22 ("That [procedure] was developed based on the CDC list.").

But beyond this custody re-assessment, Respondents have failed to offer *any* evidence of measures designed to address the needs of those high-risk detainees who ICE *has* re-assessed and determined should *remain* in ICE custody.  *See* Dkt. No. 15 at 1 (confirming that all Petitioners in this case, who remain detained, had their custody re-assessed by ICE pursuant to the April 4, 2020 guidance).  Indeed, Respondents can point to *no specific actions* that they have taken in direct response to the serious, unmet medical needs of detainees who remain in ICE custody.  *See* Apr. 10 Hr'g Tr. at 24:11–16 (citing "increased precautions generally" but conceding that these are "not necessarily targeted at high risk [detainees]").  They have not isolated these high-risk individuals; they have not created special safety or hygiene protocols for these high-risk individuals or for staff interacting with them; they have not provided high-risk individuals with any personal protective equipment, such as masks—which the CDC now recommends be worn in settings, like jails, "where other social distancing measures are difficult to maintain" in order to prevent the virus from "spread[ing] between people interacting in close proximity."  *See* Centers for Disease Control and Prevention, Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community-Based Transmission, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html. Especially in light of the highly contagious nature of COVID-19 and its rapid spread within the Bergen County Jail, specific measures designed to protect high-risk detainees from the virus are of the utmost importance.  *Compare* Dkt. No. 11 ¶ 12.b (averring that as of March 24, 2020, one detainee at Bergen County Jail had tested positive for COVID-19) *with* Dkt. No. 10 ¶ m (averring that as of April 8, 2020 there were two confirmed positive cases of COVID-19 among

ICE detainees, six detainees who were symptomatic, and 16 Bergen County Corrections Police Officers who had tested positive for COVID-19).

To be sure, as discussed above, the record demonstrates that ICE has taken laudable steps in response to COVID-19.  But even the increased precautions generally taken at the Bergen County Jail do nothing to alleviate the *specific*, *serious*, and *unmet* medical needs of the high-risk detainees, who require greater precautions in light of their correspondingly greater risk of *severe* illness if they contract COVID-19.  And policies that are "generally justifiable" may still "amount[] to deliberate indifference to" the specific and unique medical needs of particular individuals.  *See Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) (holding that even if a policy is "generally justifiable," its application to a particular individual could still "amount[] to deliberate indifference to plaintiff's medical needs").  As to the specific and especially vulnerable individuals whose custody status has been re-assessed and who *remain* in ICE's custody, Respondents have taken no preventive action at all.

However, not all Petitioners can establish that Respondents *knew, or should have known*, that these conditions posed an excessive risk to their health or safety.  *Darnell*, 849 F.3d at 35. Indeed, while all Petitioners proffer undisputed evidence that ICE had actual knowledge of the existence of their chronic medical conditions, *see* Pet. ¶ 82; Apr. 10 Hr'g Tr. at 12:8–12 ("[W]e allege that the petitioners have all filed release requests with ICE which specifically raise their vulnerabilities to COVID-19."), Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo do not meet the CDC's current criteria for individuals at a higher risk of severe illness from COVID-19. *See supra* Section IV.A.  Respondents have reasonably relied on CDC criteria in identifying high-risk detainees and establishing procedures—to the extent they exist—for them.  *See* Dkt. No. 13-1; Apr. 10 Hr'g Tr. at 17:21–22.  They thus can be charged with knowledge that the

conditions articulated above posed an excessive risk to the health and safety of those Petitioners whose medical conditions come within the ambit of the CDC criteria—Petitioners Vallejo, Barbecho, and Lis.  However, there is no evidence in the record that Respondents—who have reasonably relied on CDC guidance—knew or should have known that the conditions articulated above posed an excessive risk to the health and safety of Petitioners whose medical conditions *fall outside* this guidance—Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo.

This conclusion is in line with other courts' conclusions that the Government does not act with deliberate indifference to the needs of ICE detainees who do not meet the CDC's criteria for groups at higher risk of severe illness from COVID-19.  *See Ramsundar*, 2020 WL 1809677, at *3 ("Although these individuals may be at heightened risk of developing complications from COVID-19, they do not meet the CDC's current criteria for vulnerable individuals.  Because the violation at issue arises from the respondents' failure to act on their 'actual knowledge of serious risks to the health and well-being of individuals *with the vulnerabilities identified by the CDC*,' the respondents are not acting with deliberate indifference to the needs of [certain petitioners], none of whom meets these criteria." (emphasis added) (citation omitted)); *Jones v. Wolf*, No. 20-cv-361, 2020 WL 1643857, at *12 (W.D.N.Y. Apr. 2, 2020) (concluding that petitioners "*who have the COVID-19 vulnerabilities identified by the CDC*" demonstrated a likelihood of succeeding on their claim that respondents acted with deliberate indifference to unreasonably unsafe conditions at the detention facility and to those petitioners' serious medical needs); *cf. Graham v. Decker*, No. 20-cv-2423 (PKC), 2020 WL 1847568, at *4 (S.D.N.Y. Apr. 13, 2020) (taking notice of the fact that "the CDC does not list [petitioner's] ailments as presenting a heightened risk for COVID-19 complications").

11

In short, the Respondents knew of a serious health risk as to only Petitioners Vallejo, Barbecho, and Lis, but took no action in response.  Since this Court decided *Coronel*, 2020 WL 1487274, numerous other Courts within and without this District have held that habeas petitioners have demonstrated a likelihood of success on deliberate indifference claims under similar circumstances.  *See Valenzuela Arias v. Decker*, 20-cv-2802 (AT), Dkt. No. 18 at 16–18 (S.D.N.Y. Apr. 10, 2020) (collecting cases); *accord Malam v. Adducci*, No. 20-cv-10829, 2020 WL 1672662, at *12 (E.D. Mich. Apr. 5, 2020); *cf. Christian A.R. v. Decker*, No. 20-cv-3600, Dkt. No. 26 at 25 (D.N.J. April 12, 2020).

This Court likewise concludes, on the record before it, that Petitioners Vallejo, Barbecho, and Lis have demonstrated a likelihood of success on their claim that Respondents' actions constitute deliberate indifference to their medical needs and thus violate the Fifth Amendment's substantive due process guarantee.  In so concluding, the Court recognizes that Respondents face extremely difficult and changing circumstances as they confront a public health crisis that is unprecedented in the modern era.  However, on this record, Respondents took no action at all to address the *serious* and *specific* medical needs of the three high-risk Petitioners detained in the Bergen County Jail, and that is insufficient to satisfy their constitutional obligations.

## V.   IRREPARABLE HARM

"The showing of irreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a" temporary restraining order.  *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).  Under this prong, parties seeking a temporary restraining order "must show that, on the facts of their case" and in the absence of the requested injunction, they will suffer a harm that "cannot be remedied after a final adjudication, whether by damages or a permanent injunction."  *Salinger v. Colting*, 607 F.3d 68, 81–82 (2d Cir. 2010).  In addition, the harm must be "neither

remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d

112, 114 (2d Cir. 2005) (internal quotation marks and citation omitted).

Petitioners who have established a likelihood of success on the merits with respect to

their due process claims have also established two distinct irreparable harms.  First, "the *alleged*

violation of a constitutional right . . . triggers a finding of irreparable harm," *Jolly v. Coughlin*,

76 F.3d 468, 482 (2d Cir. 1996), and Petitioners allege in their petition that their substantive due

process rights have been violated.  Accordingly, "no further showing of irreparable injury is

necessary." *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation

of a constitutional right is involved, most courts hold that no further showing of irreparable

injury is necessary.").

Second, irreparable harm exists where, as here, petitioners "face imminent risk to their

health, safety, and lives."  *Henrietta D. v. Giuliani*, 119 F. Supp. 2d 181, 214 (E.D.N.Y. 2000),

*aff'd sub nom. Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003).  Due to their serious

underlying medical conditions, Petitioners Vallejo, Barbecho, and Lis face a risk of severe,

irreparable harm—including death—if they contract COVID-19.  Moreover, being in

immigration detention places these Petitioners at a significantly higher risk of contracting

COVID-19.  Indeed, numerous courts, including this one, have recognized that "[i]ndividuals in

carceral settings are at a 'significantly higher' risk of spreading infectious diseases." *United

States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020)

(collecting cases) (quoting *Coronel*, 2020 WL 1487274, at *3).  The imminence of this risk is

underscored by the fact that since March 24, 2020, the number of confirmed cases of COVID-19

among detainees, inmates, and staff at the Bergen County Jail has increased from only one to

nearly 20, including 16 Bergen County Corrections Police Officers who work at the Jail.

*Compare* Dkt. No. 11 ¶ 12.b *with* Dkt. No. 10 ¶ m.

## VI.    BALANCE OF THE EQUITIES AND PUBLIC INTEREST

Where the Government is the opposing party, the final two factors in the temporary

restraining order analysis—the balance of the equities and the public interest—merge.  *Planned*

*Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d

308, 343 (S.D.N.Y. 2018).  For the reasons stated below, Petitioners Vallejo, Barbecho, and Lis

have demonstrated that the balance of equities and the public interest clearly weigh in their favor.

First, as this Court has previously stated on several occasions, the "public interest is best

served by ensuring the constitutional rights of persons within the United States are upheld."

*Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018).

As discussed above, these Petitioners have established a likelihood of success on the merits on

their due process claims.  Accordingly, the public interest is best served by enjoining further

likely violations of these Petitioners' rights through their release.

Furthermore, both these Petitioners and the public benefit from ensuring public health

and safety, *see Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169 (2d Cir.

2005) (referring to "public health" as a "significant public interest"), and, under the

circumstances, the public interest in ensuring public health is also best served by these

Petitioners' release.  Of all New Jersey counties, Bergen County has been most acutely affected

by the COVID-19 pandemic.  Indeed, on April 14, 2020, it reported 10,426 positive test results

and 550 deaths from the virus to date.  *See* State of New Jersey Department of Health, NJ

COVID-19 Dashboard, https://www.nj.gov/health/cd/topics/covid2019_dashboard.shtml.  A

14

severe COVID-19 outbreak at the Bergen County Jail could further strain the already-strained

local health care system.  Decreasing the Bergen County Jail population will thus "mitigate the

damage" to both the Jail and the surrounding community and thereby "reduce the death toll."

*United States v. Nkanga Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar.

31, 2020) ("Realistically, the best—perhaps the only—way to mitigate the damage and reduce

the death toll is to decrease the jail and prison population by releasing as many people as

possible.").  Indeed, "reducing the size of the population in jails and prisons . . . reduc[es] the

level of risk both for those within those facilities and for the community at large."  *Coronel*,

2020 WL 1487274, at *7 (citation omitted).

A comprehensive assessment of these factors requires the Court to balance the public

interest in these Petitioners' release articulated above—including the harm that they and others

may face if they remain detained—with any public interest in their continued detention—

including any risk of flight or danger to the community that they pose.  Respondents do not

themselves explicitly argue to this Court that Petitioners pose a risk of flight or a danger to the

community, but they note that ICE has previously considered whether these Petitioners, who are

detained pursuant to 8 U.S.C. § 1226(a), should be released and ultimately determined not to

release them.  *See* Dkt. No. 8 at 11.  Respondents also offer evidence of the prior criminal

records of Petitioners Vallejo, Barbecho, and Lis.  The Court has reviewed these records, Dkt.

Nos. 9-1 (Barbecho), 9-4 (Lis), 9-7 (Vallejo), and though it cannot say that these Petitioners pose

*no* danger to the community, it agrees with Petitioners that on the record before the Court, any

flight risk or dangerousness concerns can be addressed through reasonable conditions of release.[4] *See* Apr. 10. Hr'g Tr. at 32:15–33:10.  These petitioners represent that they are amenable to reasonable conditions of release.  *Id.* at 33:6–10.

In light of the foregoing, it is clear that whatever interest the Government may have in these Petitioners' continued detention is far outweighed by the public interest in their release in light of the COVID-19 pandemic.  Accordingly, the balance of the equities and the public interest weigh in favor of granting these Petitioners' motion for a temporary restraining order.

## VII.    REMEDIES

In light of the conclusion that Petitioners are likely to succeed on the merits of their substantive due process claims, the Court must determine the appropriate interim remedy.  In *Mapp v. Reno*, the Second Circuit held "that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction" including immigration detainees petitioning for habeas relief.  241 F.3d 221, 226 (2d Cir. 2001).  But "this power is a limited one, to be exercised in special cases only."  *Id.*  To determine a petitioner's "fitness for bail" pending adjudication of a habeas petition, the Court "must inquire into whether 'the habeas petition raises substantial claims and [whether] extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective.'"  *Id.* at 230 (quoting *Iuteri v. Nardoza*, 662 F.2d

---

[4] According to summaries of their criminal records, Petitioner Barbecho appears to have two misdemeanor convictions for menacing and possession of a forged instrument, and one open felony case, stemming from various charges of rape and sexual abuse, *see* Dkt. No. 8 at 3; *see generally* Dkt. No. 9-1; Petitioner Lis appears to have one felony and two misdemeanor cases open, stemming from charges of criminal mischeif, trespass, and assault, *see* Dkt. No. 8 at 4–5; *see generally* Dkt. No. 9-4; and Petitioner Vallejo has convictions related to stolen goods, motor vehicle violations, shoplifting, driving under the influence of drugs or alcohol, and disorderly conduct, s*ee* Dkt. No. 8 at 5–6; *see generally* Dkt. No. 9-7.  With respect to these Petitioners' open criminal cases, the Court credits their representation at oral argument on this motion that these cases "likely will be resolved favorably, either due to exonerating evidence or otherwise." Apr. 10 Hr'g Tr. at 13:16–19.

159, 161 (2d Cir. 1981)) (alterations in original).  Additionally, some courts applying *Mapp* also consider "whether the petitioner has demonstrated a likelihood of success on the merits of his or her petition."  *Boddie v. New York State Div. of Parole*, No. 08-cv-9287 (LAP), 2009 WL 1531595, at *1 (S.D.N.Y. May 28, 2009).  The parties agree that *Mapp* and the standard articulated therein govern the proper remedy here.[5]

For the reasons stated above, the Court finds that Petitioners Vallejo, Barbecho, and Lis have raised substantial claims and demonstrated a likelihood of success on the merits of their deliberate indifference claims.  The Court thus considers whether these claims involve "extraordinary circumstances" that "make the grant of bail necessary to make the habeas remedy effective."  *Mapp*, 241 F.3d at 230 (quotation omitted).

Severe health issues have been the "prototypical but rare case of extraordinary circumstances that justify release pending adjudication of habeas."  *See Coronel*, 2020 WL 1487274, at *9 (collecting cases).  Petitioners' deliberate indifference claims seek to vindicate their constitutional right to adequate protection from COVID-19 in light of their underlying medical conditions.  As discussed above, the Court has concluded that there is a likelihood that these Petitioners are being subjected to unconstitutional conditions of confinement, and that the risks posed by COVID-19 are imminent.  If these Petitioners—whose medical conditions place them at a higher risk of severe illness, or death, from COVID-19—were to remain detained, they would face a significant risk that they would contract COVID-19—the very outcome they seek to avoid.  Release is therefore necessary to "make the habeas remedy effective."  *Mapp*, 241 F.3d at 230 (quotation omitted); *see also Calderon Jimenez v. Wolf*, No. 18-cv-10225 (MLW), Dkt. No.

---

[5] Were the Court to also consider whether Petitioners pose a danger to the community or a risk of flight in its *Mapp* analysis, such consideration would reinforce its decision to grant temporary release, as discussed above.  *See supra* Section VI.

507-1, at 3–4 (D. Mass. Mar. 26, 2020) (granting release under *Mapp* where the risk of a COVID-19 outbreak in the relevant prison constituted an extraordinary circumstance).

## VIII.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Petitioners' motion for a temporary restraining order.  The Court GRANTS the motion with respect to Petitioners Vallejo, Barbecho, and Lis and orders Respondents to IMMEDIATELY RELEASE them on reasonable conditions.  The parties are hereby ordered to meet and confer and propose reasonable bond conditions by no later than 12 p.m. on April 15, 2020.

The Court DENIES the motion with respect to Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo.

The temporary restraining order will expire on April 28, 2020.  No later than April 20, 2020, Respondents must show cause why it should not be converted to a preliminary injunction. Petitioners may file a response no later than April 26, 2020.

This resolves Dkt. No. 3.

SO ORDERED.

Dated: April 14, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge