USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___5/11/20___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Milton Barbecho, *et al.*,

               Petitioners,

     –v–

Thomas Decker, *et al.*,

               Respondents.

20-cv-2821 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

       Petitioners Josue Vallejo, Milton Barbecho, and Denis Lis were previously detained by

Immigration and Customs Enforcement ("ICE") at the Bergen County Jail, a facility with

confirmed cases of COVID-19 among the detainee, inmate, and staff populations.  They filed a

petition for a writ of habeas corpus under 28 U.S.C. § 2241, requesting release from ICE custody

due to the risks posed by COVID-19 to them.[1]  *See generally* Pet. (Dkt. No. 1).  Now before the

Court is Petitioners' motion for a preliminary injunction.  For the reasons that follow, the Court

GRANTS their motion and CONVERTS the temporary restraining order now in place into a

preliminary injunction.

## I.   BACKGROUND

       The Court assumes familiarity with the factual and procedural background in this matter

as set forth in its April 14, 2020 Opinion and Order granting Petitioners' motion for a temporary

---

[1] Though four other Petitioners are also joined on the Petition, because the Court previously denied the motion for a temporary restraining order with respect to these additional petitioners, *see* Dkt. No. 20, their claims are not now before the Court as it considers whether to convert the temporary restraining order in place into a preliminary injunction.  The Court refers to Petitioners Vallejo, Barbecho, and Lis as "Petitioners" throughout this Opinion and Order.

restraining order.  *See* Dkt. No. 20.  Briefly, Petitioners Vallejo, Barbecho, and Lis, who were previously detained by ICE at the Bergen County Jail, suffer from conditions that place them at a "higher risk for severe illness from COVID-19" under current CDC guidance.  *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. On April 5, 2020, Petitioners filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, alleging that Respondents' deliberate indifference to their serious medical needs violated their due process rights.  *See generally* Pet.  On April 8, 2020, Petitioners filed a motion for a temporary restraining order and preliminary injunction, seeking their immediate release from ICE custody.  Dkt. No. 3.  On April 14, 2020, the Court granted that motion with respect to Petitioners Vallejo, Barbecho, and Lis, concluding that these Petitioners were likely to succeed on the merits of their deliberate indifference claims.  *See generally* Dkt. No. 20.  The Court thus ordered Petitioners Vallejo, Barbecho, and Lis immediately released and required Respondents to show cause why the temporary restraining order should not be converted to a preliminary injunction.  *Id.* at 18.

Respondents filed a memorandum of law opposing the conversion of the temporary restraining order into a preliminary injunction, Dkt. No. 27, and Petitioners filed a memorandum of law supporting such conversion, Dkt. No. 32.  The parties subsequently confirmed that they did not intend to seek an evidentiary hearing on Petitioners' motion and consented to its resolution on the papers.  Dkt. No. 34.  On April 28, 2020, the Court found that good cause existed under Rule 65(b)(2) of the Federal Rules of Civil Procedure to extend the temporary restraining order an additional 14 days to allow the Court to consider the record and the parties'

briefing on Petitioners' motion for a preliminary injunction.  Dkt. No. 35.  The Court now resolves that motion on the paper record.

## II.   SEVERANCE

In its Opinion and Order on Petitioners' motion for a temporary restraining order, the Court deferred ruling on the issue of severance, concluding that considerations of judicial economy and the urgent need to timely decide Petitioners' motion for a temporary restraining order in light of the immediate risk to their health counseled against severance at that juncture. *See* Dkt. No. 20 at 3.  The Court now considers whether the Petition should be severed into separate habeas actions and concludes—at least with respect to the claims of Petitioners Vallejo, Barbecho, and Lis now before it—that it should not.

The parties agree that *U. S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974), is the touchstone in this Circuit for multi-party habeas proceedings.[2]  *Preiser* recognizes that courts have authority to "fashion expeditious methods of procedure in a specific" habeas proceeding, and the "unusual circumstances" of a given case may provide "a compelling justification for allowing a multi-party proceeding."  *Id.* at 1125.  In *Preiser*, the Second Circuit identifies several compelling justifications that may allow for multi-party habeas proceedings, including where the claims advanced are "applicable on behalf of the entire class, uncluttered by subsidiary

---

[2] Though *Preiser* involved a multi-party habeas proceeding similar to a class action, other courts in this District have applied it where, as here, multiple individuals—who do not make up a class—are joined in the same habeas proceeding.  *See, e.g.*, *Basank v. Decker*, No. 20-cv-2518 (AT), 2020 WL 1953847, at *2–3 (S.D.N.Y. Apr. 23, 2020); *Bob v. Decker*, No. 19-cv-8226 (CM), Dkt. No. 4 at 2–3 (S.D.N.Y. Oct. 15, 2019).  Nonetheless, were the Court to engage in a traditional severance analysis and apply the factors courts in this District typically consider, it would reach the same conclusion for the reasons articulated below.  *See Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011) ("While the Court of Appeals has not set forth specific criteria governing severance, courts in this District generally employ the following factors on a motion to sever: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.").

issues," *id.* at 1126; where the petitioners are particularly disadvantaged and would likely not have the benefit of counsel to prepare individual habeas petitions, *id.*; and where considerations of judicial economy—including the "considerable expenditure of judicial time and energy in hearing and deciding numerous individual petitions"—counsel against hearing individual petitions presenting identical issues, *id.*

The unusual circumstances of the present moment counsel in favor of considering the claims of Petitioners Vallejo, Barbecho, and Lis jointly for several reasons.  First, these Petitioners' claims are "uncluttered by subsidiary issues." *Id.*  Indeed, "the health risks posed by COVID-19 and the constitutional claims presented do not turn on facts unique to each Petitioner beyond their having preexisting conditions that make them vulnerable to the virus." *Basank*, 2020 WL 1953847, at *2.  To the contrary, the claims of Petitioners, all of whom were previously detained at the same facility, raise almost identical questions of law and fact, "including whether Respondents are adequately protecting Petitioners from contracting COVID-19, whether Respondents are deliberately indifferent to Petitioners' medical needs, and whether release from detention is justified under these circumstances." *Id.*  Moreover, as the Court has already noted, joinder will serve judicial economy and allow the Court to reach resolution as expeditiously as possible, which is of the utmost importance in light of the rapidly-spreading COVID-19 pandemic.

The Court thus concludes that "considerations of 'judicial economy and fairness argue persuasively for the construction of a procedure' such as this multi-party habeas action," where, as here, "Petitioners 'shar[e] certain complaints about the legality' of their confinement." *Id.* at *3 (quoting *Bertrand v. Sava*, 535 F. Supp. 1020, 1024 (S.D.N.Y. 1982)).  Accordingly, the

Court declines Respondents' invitation to sever the claims of Petitioners Vallejo, Barbecho, and Lis into separate habeas actions.

## III.   LEGAL STANDARD

"A preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  The same standard that governs consideration of an application for a temporary restraining order also governs consideration of an application for a preliminary injunction.  *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).  In general, a party seeking a preliminary injunction or temporary restraining order "must . . . show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest."  *Clapper*, 804 F.3d at 622 (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  The burden on the moving party is even higher where, as here, a party seeks a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo.  The Second Circuit has instructed that a mandatory injunction "should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'"  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

## IV.   LIKELIHOOD OF SUCCESS ON THE MERITS

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the Government from treating the medical needs of incarcerated individuals with deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *accord Charles v. Orange*

5

*Cty.*, 925 F.3d 73, 82 (2d Cir. 2019).  The Eighth Amendment, however, does not apply to civil

detainees.  Such individuals "have not been convicted of a crime and thus may not be punished

in any manner—neither cruelly and unusually nor otherwise."  *Darnell v. Pineiro*, 849 F.3d 17,

29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)) (internal quotation

marks omitted).  The Supreme Court has held, however, that "persons in civil detention deserve

at least as much protection as those who are criminally incarcerated."  *Charles*, 925 F.3d at 82

(citing *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982); *City of Revere v. Mass. Gen. Hosp.*,

463 U.S. 239, 244 (1983)).  For federal civil detainees, those rights are cognized under the Fifth

Amendment's Due Process Clause.  *Id.*  The Due Process Clause thus prohibits the federal

government from being deliberately indifferent to the medical needs of civil detainees.

"[D]eliberately indifferent conduct" directed towards civil detainees is "egregious enough to

state a substantive due process claim."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50

(1998).  And the Due Process Clause applies to "all 'persons' within the United States, including

aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v.

Davis*, 533 U.S. 678, 693 (2001).

Courts in the Second Circuit use a two-prong test to review such claims.  *See Charles*,

925 F.3d at 85–86.  On the first prong, Petitioners must show that they have serious, unmet

medical needs.  On the second, they must show that Defendants acted with deliberate

indifference to those needs.  *Id.*

### A.  Petitioners' Serious, Unmet Medical Needs

"The serious medical needs standard contemplates a condition of urgency such as one

that may produce death, degeneration, or extreme pain."  *Charles*, 925 F.3d at 86 (quoting

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

On the record before it on Petitioners' motion for a temporary restraining order, the Court concluded that Petitioners Vallejo, Barbecho, and Lis easily met this standard.  Though both parties have since supplemented the record, the Court now reaches the same conclusion. Respondents continue not to contest that Petitioners Vallejo, Barbecho, and Lis suffer from conditions that place them at a "higher risk for severe illness from COVID-19" under current CDC guidance, *see* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; *see also* Apr. 10 Hr'g Tr. at 16:19–24, and Petitioners therefore have a serious medical need to "take actions to reduce [their] risk of getting sick with the disease," Centers for Disease Control and Prevention, *What You Can Do*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html, because, for them, contracting COVID-19 is considerably more likely to lead to "death, degeneration, or extreme pain," *Charles*, 925 F.3d at 86.  The CDC continues to recommend that such individuals take several precautions, including staying at home if possible, washing hands often, staying six feet away from others, keeping away from those who are sick, and cleaning and disinfecting frequently touched surfaces.  *See* Centers for Disease Control and Prevention, *What You Can Do*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html.

Though the record demonstrates that ICE has taken some additional steps to address the COVID-19 pandemic at the Bergen County Jail, it has failed to adequately address the particular risks COVID-19 poses to *high-risk* individuals like Petitioners Vallejo, Barbecho, and Lis.  In short, for the reasons discussed in more detail below, these Petitioners have met their burden on the first prong on the record before the Court at this stage of the litigation.

**B.  Respondents' Deliberate Indifference to Petitioners' Serious Medical Needs**

The Court next moves to the inquiry's second prong, which requires Petitioners to show that Respondents acted with deliberate indifference to the challenged conditions.  This prong "has a . . . complicated history in this Circuit."  *Charles*, 925 F.3d at 86.  To start, although courts have often referred to this as the "subjective prong" of the inquiry, it is "better classified as a '*mens rea* prong' or 'mental element prong.'"  *Darnell*, 849 F.3d at 29.  Indeed, the phrase "subjective" in this prong "might be a misleading description in that . . . 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)."  *Darnell*, 849 F.3d at 35 (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)); *see also Charles*, 925 F.3d at 86 (deliberate indifference "can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind").  In short, a petitioner establishes a claim for deliberate indifference by "prov[ing] that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell*, 849 F.3d at 35.  This is a question of fact, susceptible to proof by circumstantial evidence.  *Charles*, 925 F.3d at 87 ("Whether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.").

As an initial matter, it is undoubtedly a positive development that masks are now provided to all detainees and staff at the Bergen County Jail.  *See* Dkt. No. 29-1 ¶¶ 9e, n.[3]  But

---

[3]  The Court grants Respondents' request, Dkt. No. 29, to file the April 21 Ahrendt Declaration, Dkt. No. 29-1, on which the Court relies herein.

beyond pointing to the provision of this personal protective equipment to all ICE detainees and staff at the Bergen County Jail, Respondents have not offered any other evidence not already considered by the Court of measures designed to reduce the risk of high-risk detainees contracting COVID-19.  The Jail has not isolated these high-risk individuals, nor has it created special safety or hygiene protocols for them.  Indeed, high-risk detainees remain housed with the general population of ICE detainees, confined to 10' by 7' cells for 23 hours of the day and sleeping in bunk beds.  Dkt. No. 29-1 ¶¶ 6, 9f.  While such conditions are intended to maintain proper social distancing among the detainee population, *id.* ¶ 9f, it is nonetheless impossible for high-risk detainees to practice social distancing as recommended by the CDC *from those with whom they share cells and bunk beds.  See* Centers for Disease Control and Prevention, *What You Can Do*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html (describing the importance of taking actions, including staying six feet away from others, to reduce the risk of getting sick for those who are at a higher risk); *see also* Dkt. No. 32-3 ¶ 10 ("[I]t would have been impossible to socially distance myself from my cell mate because the cell we shared was very small.").  Furthermore, during the 60-minute period when detainees are permitted to leave their cells, they may utilize the available space for "recreational use," including showering and making phone calls.  Dkt. No. 29-1 ¶ 9f.  And though the Bergen County Jail has implemented an increase in general cleaning and sanitizing, *id.* ¶ 9l, there is no evidence in the record that these frequently-touched surfaces are sanitized between each use, which the CDC describes as an "extra important" precaution for those "at higher risk for serious illness from COVID-19 because of . . . a serious long-term health problem," *see* Centers for Disease Control and Prevention, *What You Can Do*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html; *see also* Dkt. No. 32-3 ¶ 6 ("The phones we

were able to use were never cleaned in between uses.  Bergen officers never gave us anything to

clean the phones before we used them.  Before I used the phone, I would just wipe it with my

shirt.  I do not know how often the phones were cleaned, or if they were even cleaned at all.").

While the proactive measures Bergen County Jail has taken and continues to take may "suffice[]

to meet the medical needs of ordinary detainees, those measures" continue to "'do nothing to

alleviate the *specific, serious*, and *unmet* medical needs of . . . high-risk [detainees].'"  *Avendaño*

*Hernandez v. Decker*, No. 20-cv-1589 (JPO), 2020 WL 1547459, at *3 (S.D.N.Y. Mar. 31, 2020)

(quoting *Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *5 (S.D.N.Y. Mar.

27, 2020)).

      To be sure, the Court "does not hold that the CDC's guidelines amount to strict rules of

constitutional law that Respondents must follow in every circumstance," but it does take the

Bergen County Jail's failure "to implement basic elements of social distancing, isolation, and

protective measures for high-risk individuals to be an overwhelming indication that . . .

[Petitioners'] specific medical needs as vulnerable individuals" would continue to go unmet in

the Bergen County Jail.  *Basank*, 2020 WL 1953847, at *11 (converting a temporary restraining

order into a preliminary injunction based on a showing of similar conditions at three county jails,

including the Bergen County Jail).

      Because Respondents remain aware of the serious health risks posed to high-risk

individuals—including Petitioners Vallejo, Barbecho, and Lis, *see* Pet. ¶ 82; Apr. 10 Hr'g Tr. at

12:8–12; *see also* Dkt. No. 13-1—but can point to *no specific actions* that they have taken in

direct response to the serious, unmet medical needs of the high-risk detainees who remain in ICE

custody, the Court concludes once more, on the record now before it, that Petitioners Vallejo,

Barbecho, and Lis have demonstrated a likelihood of success on their claim that Respondents'

actions constituted deliberate indifference to their medical needs and thus violated the Fifth
Amendment's substantive due process guarantee.

## V.    IRREPARABLE HARM

"The showing of irreparable harm is '[p]erhaps the single most important prerequisite for
the issuance of a" preliminary injunction. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.
2002) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.
1983)). Under this prong, parties seeking a preliminary injunction "must show that, on the facts
of their case" and in the absence of the requested injunction, they will suffer a harm that "cannot
be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger
v. Colting*, 607 F.3d 68, 81–82 (2d Cir. 2010). In addition, the harm must be "neither remote nor
speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d
Cir. 2005) (internal quotation marks and citation omitted).

For the reasons discussed above and stated in its April 14, 2020 Opinion and Order, Dkt.
No. 20, the Court concludes once more—on the supplemented record now before it—that
Petitioners Vallejo, Barbecho, and Lis have established two distinct irreparable harms that derive
respectively from the alleged violations of their constitutional rights, *see Jolly v. Coughlin*, 76
F.3d 468, 482 (2d Cir. 1996), and the "imminent risk to their health, safety, and lives" they
would face were they to be redetained at the Bergen County Jail, *see Henrietta D. v. Giuliani*,
119 F. Supp. 2d 181, 214 (E.D.N.Y. 2000), *aff'd sub nom. Henrietta D. v. Bloomberg*, 331 F.3d
261 (2d Cir. 2003).

Though the number of suspected COVID-19 cases among detainees and inmates at the
Bergen County Jail has gone down since the Court's April 14 Opinion and Order, *compare* Dkt.
No. 10 ¶ 9m2 *with* Dkt. No. 29-1 ¶ 9o2, this risk nonetheless remains imminent. Respondents do
not offer evidence that "testing is widely offered or used to ascertain the scope of the outbreak"

among the detainee and inmate populations.  *Basank*, 2020 WL 1953847, at \*10; *see also* Dkt.

No. 32-1 ¶ 47 n.59 (Bergen County Jail "do[es] not appear to test individuals who were exposed

but are asymptomatic.").  And the considerable increase in infections among the Bergen County

Jail *staff*—from 16 Bergen County Corrections Police Officers as of April 8, 2020 to 24 Bergen

County Corrections Police Officers and four nurses who work at the facility as of April 21, 2020,

*compare* Dkt. No. 10 ¶ 9m4 *with* Dkt. No. 29-1 ¶ 9o4—suggests that the virus continues to pose

an "imminent risk to the[] health, safety, and lives" of those detained by ICE at the Bergen

County Jail, *Henrietta D.*, 119 F. Supp. 2d at 214.[4]

## VI.   BALANCE OF THE EQUITIES AND PUBLIC INTEREST

Where the Government is the opposing party, the final two factors in the preliminary

injunction analysis—the balance of the equities and the public interest—merge.  *Planned*

*Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d

308, 343 (S.D.N.Y. 2018).  The supplements made to the record do not alter the Court's prior

balancing of these factors, and it thus concludes once again that Petitioners Vallejo, Barbecho,

and Lis have demonstrated that the balance of the equities and the public interest clearly weigh in

their favor.  Indeed, whatever interest the Government may have in redetaining them is far

outweighed by the public interest in their continued release in light of the COVID-19 pandemic.

*        *        *        *        *

Having met all of the preliminary injunction factors, Petitioners Vallejo, Barbecho, and Lis

have established their entitlement to a preliminary injunction under Rule 65 of the Federal Rules

---

[4] Respondents' additional argument that any harm arising from detention is speculative because Petitioners are not currently detained is specious.  *See* Dkt. No. 27 at 20–21.  Respondents cannot use the Court's grant of Petitioners' motion for a temporary restraining order—and immediate release of Petitioners Vallejo, Barbecho, and Lis—to defeat conversion of the temporary restraining order now in place into a preliminary injunction.

of Civil Procedure.  Accordingly, the Court converts the temporary restraining order now in place with respect to these Petitioners into a preliminary injunction.[5]

## VII.   CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioners' motion and CONVERTS the temporary restraining order in place with respect to Petitioners Vallejo, Barbecho, and Lis into a preliminary injunction.  These Petitioners shall remain released, subject to conditions to be set by the Court.

It is SO ORDERED that the parties shall meet and confer and propose reasonable conditions of release for each Petitioner by **May 13, 2020**.

SO ORDERED.

Dated: May 11, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[5] Even were the Court to conclude that these Petitioners failed to meet all of the preliminary injunction factors, it would nonetheless order them to remain released because it previously released them on bail *pending final resolution of their habeas claims* pursuant to the Second Circuit's decision in *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).  Accordingly, the Court holds, in the alternative to granting the motion for a preliminary injunction, that bail should remain imposed with respect to these Petitioners pending final resolution of the Petition.