Case 1:20-cv-02821-AJN   Document 54   Filed 05/15/20   Page 1 of 16

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/15/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Milton Barbecho, *et al.*, <br><br> Petitioners, <br><br> –v– <br><br> Thomas Decker, *et al.*, <br><br> Respondents. | 20-cv-2821 (AJN) <br><br> ORDER |

ALISON J. NATHAN, District Judge:

Before the Court is the motion for a temporary restraining order brought by Petitioners Felipe Diaz Presbot, Fredy Olaya Lugo, Jose Molina, and Oliver de Jesus Garcia Alejo. For the reasons that follow, the Court GRANTS this motion and orders these Petitioners IMMEDIATELY RELEASED on reasonable conditions.

**I.  BACKGROUND**

On April 5, 2020, seven civil immigration detainees detained by Immigration and Customs Enforcement ("ICE") at the Bergen County Jail—a facility with confirmed cases of COVID-19 among the detainee, inmate, and staff populations—filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, requesting release from ICE custody due to the risks posed by COVID-19 to them. *See generally* Pet. (Dkt. No. 1). In their Petition, Petitioners alleged that Respondents' deliberate indifference to their serious medical needs violated their due process rights. On April 8, 2020, Petitioners filed a motion for a temporary restraining order and preliminary injunction, seeking their immediate release from ICE custody subject to reasonable conditions. Dkt. No. 3. After holding oral argument, the Court granted the motion for a

1

temporary restraining order with respect to three Petitioners but denied it with respect to Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo, concluding that these Petitioners had failed to establish a likelihood of success on their due process claims. *See* Dkt. No. 20 at 10–11.

Petitioners subsequently filed an Amended Petition, Am. Pet. (Dkt. No. 31), which includes additional allegations relating to their medical conditions.[1] Specifically, the Amended Petition alleges that Petitioner Diaz suffers from stage 2 hypertension, for which he is not currently receiving any medication, and, prior to his detention, smoked a half a pack or a pack of cigarettes everyday for over 20 years. Am. Pet. ¶ 71. With respect to Petitioner Olaya Lugo, the Amended Petition alleges that his advanced age and his lengthy history of smoking six to ten cigarettes a day for the past 35 years place him at severe risk of complications or even death from COVID-19. *Id.* ¶ 72. The Amended Petition further alleges that Petitioner Molina meets the criteria for hypertension and is at risk for a stroke or other coronary diseases. *Id.* ¶ 74. Finally, with respect to Petitioner Garcia Alejo, the Amended Petition alleges that in addition to his habit of smoking several cigarettes daily for several years, he has suffered from asthma since he was a child, often experiencing shortness of breath and difficulty breathing. *Id.* ¶ 79. Since being detained, he has experienced shortness of breath, feelings of suffocation, congestion, and dizzy spells. *Id.*

After filing their Amended Petition, Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo then filed a second motion for a temporary restraining order and preliminary injunction, which is now before the Court. *See* Dkt. No. 37.

---

[1] As discussed in the Court's April 14 Opinion and Order, the original Petition includes the following allegations: Petitioner Diaz is a 40-year-old man who suffers from high blood pressure, Am. Pet. ¶ 71, but has not been provided any blood pressure medications by the Bergen County Jail medical staff, Dkt. No. 17 at 2; Dkt. No. 17-1 ¶ 14. Petitioner Olaya Lugo is a 52-year-old man who is pre-diabetic and a daily smoker. Pet. ¶ 72. Petitioner Molina is a 27-year-old man who is also pre-diabetic. *Id.* ¶ 73. Neither Petitioner Olaya Lugo nor Petitioner Molina has received necessary medical care related to their pre-diabetes while in ICE custody. *Id.* ¶¶ 72–73. Petitioner Garcia Alejo is a 24-year-old man who reports smoking several cigarettes daily for over two years. *Id.* ¶ 78.

## II. DISCUSSION

The Court assumes familiarity with the factual and procedural background as set out in its April 14, 2020 Opinion and Order, granting in part and denying in part Petitioners' motion for a temporary restraining order. *See* Dkt. No. 20. It incorporates by reference the conclusions set forth therein and revisits only those conclusions for which the record now before it compels a contrary result.

### A. Likelihood of Success on the Merits of Deliberate Indifference to Serious Medical Needs Claim

As an initial matter, though, as Respondents note, Petitioner Diaz is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), *see* Dkt. No. 41 at 11, while Petitioners Olaya Lugo, Molina, and Garcia Alejo are discretionarily detained pursuant to 8 U.S.C. § 1226(a), *id.*, this fact does not alter the Court's due process analysis. As several courts in this District—including this one—have recognized, courts may release petitioners detained in violation of their due process rights, even where such detention is mandatory under § 1226(c). *See, e.g.*, *Rodriguez Sanchez v. Decker*, No. 18-cv-8798 (AJN), 2019 WL 7047328, at *6 (S.D.N.Y. Dec. 23, 2019) (ordering that petitioner detained in violation of his due process rights be provided with a bond hearing or immediately released); *Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *14 (S.D.N.Y. May 23, 2018) (same); *see also Basank v. Decker*, No. 20-cv-2518 (AT), 2020 WL 1953847, at *12 (S.D.N.Y. Apr. 23, 2020) ("[C]ourts have the authority to order those detained in violation of their due process rights released, notwithstanding § 1226(c)."); *Cabral v. Decker*, 331 F. Supp. 3d 255, 259 (S.D.N.Y. 2018) ("[F]ederal courts have the authority to order that the petitioners [detained pursuant to § 1226(c)] be released from detention unless they are provided with an individualized bond hearing."). This is so because though "detention under § 1226(c) may serve valid statutory purposes," not "all detentions pursuant to § 1226(c)

necessarily comport with due process." *Rosemond v. Decker*, No. 19-cv-9657 (NSR) (LMS), 2020 WL 1876318, at *5 (S.D.N.Y. Apr. 14, 2020). Accordingly, the Court considers the due process claims of Petitioners who are detained pursuant to § 1226(a) and § 1226(c) together and pursuant to the same analysis.

### 1. Petitioners' Serious, Unmet Medical Needs

In the Court's April 14 Opinion and Order, the Court noted—without definitively deciding—that it was not entirely "clear on the record" whether Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo "have serious medical needs that 'may produce death, degeneration, or extreme pain.'" Dkt. No. 20 at 6 (quoting *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019)). In particular, the Court noted that none of the specific medical conditions from which Petitioners allegedly suffer then appeared in the Centers for Disease Control and Prevention ("CDC") guidance defining groups at higher risk for severe illness from COVID-19. *See id.* at 6–7. Since the Court issued its April 14 Opinion and Order, however, Petitioners have supplemented the record with additional information related to their medical conditions and the CDC has updated its guidance with respect to people and groups at higher risk for severe illness from COVID-19. *See, e.g.*, Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. On the record now before it, the Court concludes that Petitioners do have serious medical needs that "may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86.

Petitioners present evidence that each suffers from hypertension, a history of smoking, or some combination of these conditions.[2] Petitioners specifically present evidence from medical

---

[2] In addition to these conditions, Petitioners also present evidence of other comorbidities. For example, Dr. Hoang, a medical expert who reviewed Petitioner Olaya Lugo's medical records, expressed concern that his poor dentition,

4

professionals who have reviewed the medical records of Petitioners Diaz and Molina and concluded that they meet the criteria for hypertension. With respect to Petitioner Diaz, Dr. Darwish concluded that his blood pressure readings evince stage 2 hypertension, which is uncontrolled, as his medical records do not indicate that he is receiving treatment for this condition at the Bergen County Jail. *See* Dkt. No. 37-1 at 1; *see generally* Dkt. No. 37-3. Indeed, his records indicate that he has not even been diagnosed with hypertension by the Bergen County Jail. Dkt. No. 37-1 at 1; *see generally* Dkt. No. 37-3. And with respect to Petitioner Molina, Dr. Ngo concluded that he meets the criteria for hypertension but has neither been diagnosed with hypertension by the Bergen County Jail nor received counseling on how to manage this condition. *See* Dkt. No. 37-12 at 1; *see generally* Dkt. No. 37-14. Respondents do not explicitly contest the conclusions of Drs. Darwish and Ngo; rather they offer evidence from the Bergen County Sheriff's Office Medical Director, who avers only that Petitioners Diaz and Molina did not disclose a history of hypertension upon their arrivals at the Bergen County Jail; their blood pressures tend to "fluctuate"; and diagnosis of hypertension "can be difficult and nuanced." Dkt. No. 44 ¶¶ 5–6, 9.

Since issuance of this Court's Opinion and Order granting in part and denying in part the first motion for a temporary restraining order, the CDC has supplemented its guidance regarding groups at higher risk for severe illness, which now specifically references hypertension.[3] This

---

oral hygiene, and advanced age put him at a "relatively increased risk of severe infection." *See* Dkt. No. 37-9 at 2. Dr. Ngo, another medical expert who reviewed Petitioner Molina's medical records, noted that his elevated total cholesterol and triglycerides increase his risk of cardiovascular disease. *See* Dkt. No. 37-12 at 2. Petitioner Garcia Alejo also reported being asthmatic to the Bergen County Jail, *see* Dkt. No. 37-7 at 4–6, and Dr. Day, a third medical expert who reviewed Petitioner Garcia Alejo's medical records, *see* Dkt. No. 37-5 at 1, noted that the CDC recognizes asthma as "a 'high-risk' comorbidity," *see* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[3] In the Court's April 14 Opinion and Order, it noted that high blood pressure was not then "identified by the CDC" as placing individuals at a higher risk for severe illness from COVID-19. Dkt. No. 20 at 7 n.2.

guidance advises that serious heart conditions may put people at higher risk for severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions.  Respondents argue that this guidance "does not include individuals with hypertension as people who are at higher risk for severe illness from COVID-19," because it defines serious heart conditions to include only pulmonary hypertension, which is distinct from so-called "regular" hypertension.  *See* Dkt. No. 41 at 14.  However, this guidance also separately references regular hypertension and high blood pressure.  *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (advising that people with hypertension "should continue to manage and control their blood pressure and take their medication as directed," including medication prescribed for high blood pressure).  The Court disagrees with Respondents that this guidance "makes clear" that only pulmonary hypertension "qualifies as a serious heart condition that could put someone at higher risk for COVID-19."  *See* Dkt. No. 41 at 15.  Indeed, that hypertension constitutes a condition that may put people at higher risk for severe illness from COVID-19 is confirmed by CDC findings that also post-date this Court's April 14 Opinion and Order; a CDC report dated April 17, 2020 found that among a sample of people hospitalized with COVID-19 during the month of March, the most common underlying condition—reported by nearly 50% of patients with data on underlying conditions—was hypertension.  *See* Centers for Disease Control and Prevention, *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019—COVID-NET, 14 States, March 1–30, 2020* (Apr. 17, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm.

Petitioners also present evidence that Petitioners Diaz, Olaya Lugo, and Garcia Alejo have extensive histories of smoking that render them immunocompromised and thus at higher risk for severe illness from COVID-19.  As discussed above, the Amended Petition alleges that Petitioner Diaz has a history of smoking a half a pack or a pack of cigarettes everyday for over 20 years, Am. Pet. ¶ 71; Petitioner Olaya Lugo has a history of smoking six to ten cigarettes a day for the past 35 years, *id.* ¶ 72; and Petitioner Garcia Alejo has a history of smoking several cigarettes daily for several years, *id.* ¶ 79.  These Petitioners also specifically present evidence from medical professionals who have reviewed their medical records and concluded that they are at a higher risk for severe illness from COVID-19 due to their histories of smoking.  *See* Dkt. No. 37-1 at 1–2 (opinion of Dr. Darwish with respect to Petitioner Diaz); Dkt. No. 37-5 at 1–2 (opinion of Dr. Day with respect to Petitioner Garcia Alejo); Dkt. No. 37-9 at 1–2 (opinion of Dr. Hoang with respect to Petitioner Olaya Lugo).  Respondents contest neither these alleged histories nor the medical opinions of Drs. Darwish, Day, and Hoang.[4]  *See* Dkt. No. 41 at 17–18.

The CDC continues to identify people who are immunocompromised, including as a result of smoking, as at a higher risk for severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. While the Court previously concluded that Petitioners had not "offered any evidence that their histories of smoking have caused them to be immunocompromised," Dkt. No. 20 at 7 n.2, the record now before the Court includes such evidence.

---

[4] While Respondents do argue that "the information submitted to ICE discusses multiple comorbidities for each Petitioner, and is not sufficient to show that ICE, reasonably relying on the CDC guidance, would have known that the various conditions articulated by Petitioners would have potentially made them immunocompromised and qualified them as 'high-risk,'" Dkt. No. 41 at 17–18, this argument is relevant only to the second prong of the deliberate indifference analysis.

Having considered the additional information relating to Petitioners' medical conditions and the updated CDC guidance, the Court now concludes on the record before it that Petitioners have serious medical needs as a result of conditions that place them at a higher risk for severe illness from COVID-19.

Furthermore, for reasons discussed in greater detail in the Court's April 14 and May 11 Opinions and Orders, Dkt. Nos. 20, 50, these serious medical needs remain unmet.  Though the Court did not have the opportunity in those Opinions and Orders to consider the increased sanitation measures Bergen County Jail has since implemented—including sanitizing common bathrooms after every shift, Dkt. No. 43 ¶ 7, and using electric and gas foggers to sanitize units in the Jail and patrol vehicles after each shift, Dkt. No. 42 ¶ 9(o)—these increased measures, though admirable—and, indeed, necessary—do not alter its prior conclusions.  High-risk detainees remain housed with the general population of ICE detainees—confined to 10' by 7' cells for 23 hours of the day and sleeping in bunk beds.  *See* Dkt. No. 42 ¶ 6; Dkt. No. 43 ¶ 10. Under such conditions, it is impossible for high-risk detainees like Petitioners to practice the social distancing recommended by the CDC for those at higher risk for severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, *What You Can Do*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html (describing the importance of taking actions, including staying six feet away from others, to reduce the risk of getting sick for those who are at a higher risk).  The continued failure "to implement basic elements of social distancing, isolation, and protective measures for high-risk individuals [is] an overwhelming indication that the conditions of confinement are dangerous to detainees like Petitioners, and that their specific medical needs as vulnerable individuals" are going unmet in the Bergen County Jail.  *See Basank*, 2020 WL 1953847, at *11.

Accordingly, for the reasons stated above, the Court concludes that Petitioners have satisfied the serious, unmet medical needs standard.

### 2. Respondents' Deliberate Indifference to Petitioners' Serious Medical Needs

In its April 14 Opinion and Order, the Court concluded, on the record before it and in light of CDC guidance, that there was no evidence in the record that Respondents knew or should have known that the conditions of confinement posed an excessive risk to the health and safety of Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo. *See* Dkt. No. 20 at 11. In so concluding, the Court noted that Respondents had reasonably relied on CDC guidance in identifying high-risk detainees and establishing procedures—to the extent any existed—for them. *Id.* at 10.

Since April 14, however, both the record before the Court and relevant CDC guidance have changed. Indeed, as discussed above, Petitioners have submitted sufficient evidence of medical conditions that come within the ambit of updated CDC guidance and render these Petitioners at a higher risk for severe illness from COVID-19. *See supra* Section II.A.1. Petitioners also proffer undisputed evidence that ICE has actual knowledge of both the existence of their chronic medical conditions *and* the current CDC guidance. *See* Dkt. Nos. 37-1; 37-2; 37-5; 37-6; 37-9; 37-10; 37-12; 37-13.

Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo have thus established that Respondents have known of the serious health risks they face, but, as discussed above, *see supra* Section II.A.1, have not taken sufficient action in response to their serious medical needs. In light of the foregoing, the Court now concludes, on the record before it, that Petitioners have demonstrated a likelihood of success on their claim that Respondents' actions constitute deliberate indifference to the medical needs of Petitioners Diaz, Olaya Lugo, Molina, and Garcia

9

Alejo and thus violate the Fifth Amendment's substantive due process guarantee.

### B. Irreparable Harm

For the reasons discussed above and stated in its April 14 Opinion and Order, Dkt. No. 20, the Court concludes that Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo have established two distinct irreparable harms that derive respectively from the alleged violations of their constitutional rights, *see Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996), and the "imminent risk to their health, safety, and lives" continued detention at the Bergen County Jail poses to them, *see Henrietta D. v. Giuliani*, 119 F. Supp. 2d 181, 214 (E.D.N.Y. 2000), *aff'd sub nom. Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003).

Though the number of suspected COVID-19 cases among detainees and inmates at the Bergen County Jail has gone down since the Court's April 14 Opinion and Order, *compare* Dkt. No. 10 ¶ 9(m)(2) *with* Dkt. No. 42 ¶ 9(p)(2), this risk nonetheless remains imminent. Respondents do not offer evidence that "testing is widely offered or used to ascertain the scope of the outbreak" among the detainee and inmate populations. *Basank*, 2020 WL 1953847, at *10; *see also* Dkt. No. 37-16 ¶ 47 n.61 (noting that the Bergen County Jail "do[es] not appear to test individuals who were exposed but are asymptomatic."). However, prisons conducting aggressive testing "are finding that infection is spreading quickly." *See* The Marshall Project, *These Prisons Are Doing Mass Testing For COVID-19—And Finding Mass Infections* (Apr. 24, 2020), https://www.themarshallproject.org/2020/04/24/these-prisons-are-doing-mass-testing-for-covid-19-and-finding-mass-infections. And the considerable increase in infections among the Bergen County Jail *staff* from April 8, 2020 to April 21, 2020 suggests as much; as of April 8, 16 Bergen County Corrections Police Officers had tested positive for COVID-19, but by April 21, 24 Bergen County Corrections Police Officers and four nurses who work at the facility had tested positive for the virus, *compare* Dkt. No. 10 ¶ 9(m)(4) *with* Dkt. No. 29-1 ¶ 9(o)(4). While

these numbers decreased to 14 Bergen County Corrections Police Officers and three nurses who work at the facility as of May 4, 2020, Dkt. No. 42 ¶ 9(p)(4), they do not appear to reflect *cumulative* infections, and, at a minimum, suggest that the virus remains a present threat at the Bergen County Jail.  Thus, the Court concludes that Petitioners' continued detention poses an "imminent risk to their health, safety, and lives" in light of their medical conditions that render them at higher risk for serious illness from COVID-19.  *Henrietta D.*, 119 F. Supp. 2d at 214.

### C. Balance of the Equities and Public Interest

Finally, for many of the same reasons articulated in its April 14 Opinion and Order, the Court concludes that Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo have demonstrated that the balance of the equities and the public interest clearly weigh in their favor.

Not only is the "public interest . . . best served by ensuring the constitutional rights of persons within the United States are upheld," *Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018), but both Petitioners and the public also benefit from ensuring public health and safety, *see Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169 (2d Cir. 2005) (referring to "public health" as a "significant public interest"), and, under the circumstances, the public interest in ensuring public health is best served by Petitioners' release.

Nonetheless, a comprehensive assessment of these factors requires the Court to balance the public interest in these Petitioners' release—including the harm that they and others may face if they remain detained—with any public interest in their continued detention—including any risk of flight or danger to the community that they pose.  While Respondents do not themselves explicitly argue to this Court that Petitioners pose a risk of flight or a danger to the community,

11

they offer evidence of Petitioners' prior criminal records. The Court has reviewed these records, Dkt. Nos. 9-2 (Diaz), 9-3 (Garcia Alejo), 9-5 (Olaya Lugo), 9-6 (Molina), and though it cannot say that these Petitioners do not pose *any* danger to the community, it agrees with Petitioners that on the record before the Court, any flight risk or dangerousness concerns can be addressed through reasonable conditions of release.[5] *See* Dkt. No. 37 at 31. ("[A]ny flight risk or dangerousness concerns can be addressed through reasonable conditions of release." (quoting Dkt. No. 20 at 15–16)).

In light of the foregoing and for the reasons already articulated in its April 14 Opinion and Order, the Court concludes that whatever interest the Government may have in continuing to detain Petitioners is far outweighed by the public interest in their release in light of the COVID-19 pandemic

\* \* \* \* \*

Having satisfied all of the temporary restraining order factors, Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo have established their entitlement to a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure.

## III. RELEASE UNDER *MAPP*

The Court further concludes, for the reasons articulated above and in its April 14 Opinion and Order, Dkt. No. 20 at 16–18, that Petitioners are also entitled to release on bail pending final

---

[5] Based on summaries of their criminal records, and additional information where provided by counsel, Petitioners' criminal histories appear to be as follows: Petitioner Diaz has been convicted of reckless endangerment, reckless driving, resisting arrest, harassment, and conspiracy to distribute narcotics, *see* Dkt. No. 41 at 4; *see generally* Dkt. No. 9-2; Petitioner Olaya Lugo has an open case stemming from charges of sexual contact with an individual incapable of giving consent, sexual abuse, and harassment, but, according to his counsel, has been offered a plea of disorderly conduct, *see* Dkt. No. 41 at 5–6; Dkt. No. 37-10 at 1; *see generally* Dkt. No. 9-5; Petitioner Molina was charged with robbery, assault, harassment, and criminal contempt, but, according to his counsel, the case was dismissed due to significant exonerating evidence, s*ee* Dkt. No. 41 at 6; Dkt. No. 37-13 at 1; *see generally* Dkt. No. 9-6; and Petitioner Garcia Alejo has been convicted of disorderly conduct and misdemeanor possession of marijuana, *see* Dkt. No. 41 at 5; Dkt. No. 37-6 at 2; *see generally* Dkt. No. 9-3.

resolution of their habeas claims pursuant to the Second Circuit's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). "[F]ederal courts have inherent authority to admit to bail individuals properly within their jurisdiction" including immigration detainees petitioning for habeas relief. *Id.* at 226. To determine a petitioner's "fitness for bail" pending adjudication of a habeas petition, the Court "must inquire into whether 'the habeas petition raises substantial claims and [whether] extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective.'" *Id.* at 230 (alterations in original) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981)). Additionally, some courts applying *Mapp* also consider "whether the petitioner has demonstrated a likelihood of success on the merits of his or her petition." *Boddie v. New York State Div. of Parole*, No. 08-cv-9287 (LAP), 2009 WL 1531595, at *1 (S.D.N.Y. May 28, 2009).[6]

For the reasons stated above, the Court finds that Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo have raised substantial claims and demonstrated a likelihood of success on the merits of their deliberate indifference claims. Furthermore, these claims involve "extraordinary circumstances" that "make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 230 (quotation omitted). Indeed, severe health issues have been the "prototypical but rare case of extraordinary circumstances that justify release pending adjudication of habeas." *See Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *9 (S.D.N.Y. Mar. 27, 2020) (collecting cases). If these Petitioners—whose medical conditions place them at a higher risk of severe illness, or death, from COVID-19—were to remain detained, they would face a significant risk that they would contract COVID-19—the very outcome they seek to avoid. Release is therefore necessary to "make the habeas remedy

---

[6] Were the Court to also consider whether Petitioners pose a danger to the community or a risk of flight in its *Mapp* analysis, such consideration would reinforce its decision to grant temporary release, as discussed above. *See supra* Section II.C.

13

effective." *Mapp*, 241 F.3d at 230 (quotation omitted); *see also Calderon Jimenez v. Wolf*, No. 18-cv-10225 (MLW), Dkt. No. 507-1, at 3–4 (D. Mass. Mar. 26, 2020) (granting release under *Mapp* where the risk of a COVID-19 outbreak in the relevant prison constituted an extraordinary circumstance).

In so concluding, the Court finds that *Mapp* applies with equal force to Petitioners detained pursuant to § 1226(a)— Petitioners Olaya Lugo, Molina, and Garcia Alejo—and § 1226(c)—Petitioner Diaz.  In *Mapp*, the Second Circuit did not have occasion to consider whether courts' inherent powers permit them to release on bond habeas petitioners mandatorily detained pursuant to § 1226(c).  *See Mapp*, 241 F.3d at 224–29; *see also Rosemond*, 2020 WL 1876318, at *3 & n.2 ("The *Mapp* decision did not opine on the question of whether § 1226(c) limits . . . the Court's inherent powers to release a habeas petitioner to bond.").  However, the rationale of the *Mapp* decision suggests that they do.

As discussed above, the *Mapp* Court "reaffirm[ed] . . . that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction." *Mapp*, 241 F.3d at 226.  The relevant inquiry is thus whether "Congress has expressly narrowed or abolished the *judicial power* to grant bail to habeas petitioners in [Petitioner Diaz's] circumstances." *Id.* at 228 (emphasis added) (distinguishing between express limits placed on federal judicial as opposed to executive power).

Respondents argue that § 1226(c) constitutes a "specific statutory provision[]" that limits the "powers that are inherent in the federal courts."  Dkt. No. 8 at 17 (quoting *Mapp*, 241 F.3d at 229).  However, in so arguing, they ignore the fact that this provision "strip[s]" only "the *executive branch* of authority," to release habeas petitioners detained pursuant to it, *see Mapp*, 241 F.3d at 228; *see also* 8 U.S.C. § 1226(c) ("The Attorney General shall take into custody any

14

alien" who falls into any of four categories articulated in the statute.), and in no way limits—let alone *expressly* narrows or abolishes—the *judicial* power to grant bail to habeas petitioners who have raised substantial due process claims and demonstrated a likelihood of success on those claims. Respondents' argument, grounded as it is in § 1226(c), is thus "of little help with respect to the particular question" now before the Court. *Mapp*, 241 F.3d at 229. Respondents do not point to any other provision—and the Court is not aware of one—that explicitly cabins *judicial* power to grant bail to habeas petitioners, and "[a]bsent a clear direction from Congress, federal judicial power is unaltered, and the authority of the federal courts to admit to bail parties properly within their jurisdiction remains unqualified." *Id.* at 227.

The Court thus joins the numerous other courts in this District to have concluded that courts possess inherent authority to admit to bail petitioners detained pursuant to § 1226(a) and § 1226(c) alike. *See Rosemond*, 2020 WL 1876318, at *3 & n.2; *Umana Jovel v. Decker*, No. 20-cv-308 (GBD) (SN), 2020 WL 1539282, at *6 (S.D.N.Y. Mar. 31, 2020) (determining that *Mapp* applies in § 1226(c) mandatory detention cases); *Pedro Arana v. Barr*, No. 19-cv-7924 (PGG) (DCF), 2020 WL 1659713, at *3 (S.D.N.Y. Apr. 3, 2020); *Ferreyra v. Decker*, No. 20-cv-3170 (AT), 2020 WL 1989417, at *8 (S.D.N.Y. Apr. 27, 2020) (granting release, in the alternative, under *Mapp* to petitioners, some of whom were mandatorily detained pursuant to § 1226(c)); *Basank*, 2020 WL 1953847, at *13–14 (same); *cf. Vacchio v. Ashcroft*, 404 F.3d 663, 665–66, 673 (2d Cir. 2005) (explaining that a prior panel released petitioner on bail under *Mapp* during the pendency of the appeal of his habeas petition challenging mandatory detention under 1226(c)). Accordingly, in the alternative, the Court releases on bail all Petitioners now before it pending final resolution of their habeas claims.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Petitioners' motion for a temporary restraining order and orders Respondents to IMMEDIATELY RELEASE Petitioners Diaz, Olaya Lugo, Molina, and Garcia Alejo on reasonable conditions. The parties are hereby ordered to meet and confer and propose reasonable bond conditions by no later than 5 p.m. on May 15, 2020.

The temporary restraining order will expire on May 29, 2020. No later than May 18, 2020 the parties shall meet and confer and propose a briefing schedule, to the extent necessary, on the question of whether the temporary restraining order should be converted into a preliminary injunction.

This resolves Dkt. No. 37.

SO ORDERED.

Dated: May 15, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge